OLIVER W. INGERSOLL, Appellant, *v.* NASSAU ELECTRIC RAILROAD COMPANY, Respondent.

157   453
160   391
  157   453
j166    31

1. STREET SURFACE RAILROADS — STATUTORY RIGHT OF COMPANIES TO CONTRACT FOR USE OF TRACKS. The provision of chapter 218 of Laws of 1839, that "it shall be lawful for any railroad corporation to contract with any other railroad corporation for the use of their respective roads, and thereafter to use the same in such manner as may be prescribed in such contract," continued in section 78 of the Railroad Law (L. 1890, ch. 565), has been in full force and effect from the day of its enactment to and including the present time, and applies to street surface railroad corporations.

2. STATUTORY PROVISION NOT AFFECTED BY AMENDMENT OF CONSTITUTION. The provision of chapter 218 of Laws of 1839 authorizing railroad corporations to contract with each other for the use of their roads, continued in section 78 of the Railroad Law, has not been affected by the amendment of 1874 to the Constitution (Art. 3, § 18), continued in the revision of 1894.

3. RIGHT TO CONTRACT FOR USE OF TRACKS NOT SUBJECT TO CONSENTS OF ABUTTING OWNERS. Neither the constitutional amendment of 1874 nor subsequent legislation has made the exercise, by a street surface railroad company which has duly acquired its franchises according to law, of the vested absolute right conferred upon it by the act of 1839, to contract for the use of its tracks by another company, dependent upon the obtaining by the assignee company of the consents of abutting owners to such use of the street by it.

4. HARMONY OF PROVISIONS OF RAILROAD LAW. Sections 91 and 102 of the Railroad Law, relating to the obtaining of the consents of the local authorities and abutting property owners by street surface railroad companies, are not in conflict with section 78.

5. STATUTORY CONSENTS NOT REQUISITE TO OPERATION ON TRACKS OF ANOTHER COMPANY BY CONTRACT. It has never been the intention of the general railroad legislation of the state to require consents of local authorities or property owners to the operation by one railroad company of its cars over the tracks of another by virtue of a traffic contract; but the intention has been to require such consents only to the construction, maintenance or operation of new railroad tracks.

6. ACTION BY ABUTTING OWNER TO ENJOIN CONTRACT OPERATION OF TRACKS IN ABSENCE OF CONSENTS. Where one street surface railroad company has leased to another the right to operate its cars on a portion of the lessor's tracks, such use of the tracks cannot be enjoined at the suit of an abutting owner against the lessee company on the sole ground that it has not obtained the consents of abutting owners, or the statutory substitute therefor, to its use of that portion of the street.

*Ingersoll* v. *Nassau El. R. R. Co.*, 89 Hun, 213, affirmed.

(Argued November 29, 1898; decided January 10, 1899.)

APPEAL from a judgment of the late General Term of the Supreme Court in the second judicial department, entered August 16, 1895, affirming a judgment in favor of defendant entered upon a decision of the court on trial at Special Term.

This action was brought to restrain the defendant from constructing, operating or maintaining any street surface railroad on Bergen street, between Nostrand and Rogers avenues in the city of Brooklyn.

The facts, so far as material, are stated in the opinions.

*William G. Cooke* and *Frederick T. Hill* for appellant. The constitutional amendment of 1874 made the consent of abutting owners an immediate and indispensable prerequisite to the use by one street railroad of the tracks of another. (*Holmes* v. *Carley*, 31 N. Y. 290; *White* v. *Wager*, 32 Barb. 253; *Matter of N. Y. D. R. Co.*, 42 Hun, 625; *People ex rel.* v. *Potter*, 47 N. Y. 379; *People ex rel.* v. *Comrs. of Taxes*, 95 N. Y. 558; *Bell* v. *Mayor, etc.*, 105 N. Y. 144; *Matter of K. C. E. R. Co.*, 82 N. Y. 98; *F. T. Co.* v. *Coventry*, 10 Johns. 389; *M. B. Co.* v. *U. & S. R. R. Co.*, 6 Paige, 554; *Pillow* v. *Bushnell*, 5 Barb. 156.) Under the Railroad Law of 1890 the consent of abutting owners was necessary to the operation of defendant's road. (*C. C. T. Co.* v. *K. C. R. R. Co.*, 153 N. Y. 540.) The Atlantic Avenue Railroad Company possessed no such right to make and carry out the contract in question that it could not be taken away by the amendment of 1874 or the statute of 1890. (*Bank of Augusta* v. *Earle*, 13 Pet. 595; *Curtis* v. *Leavitt*, 15 N. Y. 170; *People* v. *U. Ins. Co.*, 15 Johns. 387; *People* v. *B., F. & C. I. R. R. Co.*, 89 N. Y. 84; *People* v. *O'Brien*, 111 N. Y. 43; Const. U. S. art. 1, § 10; 4 Black. Comm. 162; *Munn* v. *Illinois*, 94 U. S. 125; *People ex rel.* v. *Squire*, 107 N. Y. 606; *P. Church* v. *City of New York*, 5 Cow. 540; *People ex rel.* v. *Grant*, 126 N. Y. 473; *People ex rel.* v. *Thatcher*, 42 Hun, 349.)

*Chas. A. Collin* and *Henry Yonge* for respondent. The traffic agreement between the Nassau Electric Railroad Company and the Atlantic Avenue Railroad Company, authorizing the former company to run its cars over the tracks of the latter, is a valid, qualified assignment of the franchise of the one to the other. The consents of the abutting property owners are not necessary to render it effectual. (L. 1839, ch. 218; *People* v. *B., F. & C. I. R. Co.*, 89 N. Y. 75; *People* v. *O'Brien*, 111 N. Y. 1–66; *Ingersoll* v. *N. E. R. R. Co.*, 89 Hun, 213; *Roddy* v. *B. H. R. R. Co.*, 23 Misc. Rep. 373; *Beveridge* v. *N. Y. E. R. R. Co.*, 112 N. Y. 1;

*B. B. L. & R. R. Co.* v. *N. Y., L. E. & W. R. R. Co.*, 72 Hun, 583; *H. R. T. Co.* v. *W. T. & R. Co.*, 135 N. Y. 393; *Cameron* v. *N. Y. & M. V. W. Co.*, 133 N. Y. 336; *People ex rel.* v. *Gilroy*, 67 Hun, 323.) The right of the Atlantic Avenue Railroad Company acquired under the law of 1839 to grant by contract the use of its tracks to any other railroad corporation is a property right of which it could not thereafter be divested except in the proper exercise of the right of eminent domain or of the police power. (*People* v. *O'Brien*, 111 N. Y. 1; *Wynehamer* v. *People*, 13 N. Y. 378; *Leisy* v. *Hardin*, 135 U. S. 100; *Bowman* v. *C. & N. W. R. Co.*, 125 U. S. 527; *Roddy* v. *B. C. & N. R. R. Co.*, 32 App. Div. 311; *Matter of Jacobs*, 98 N. Y. 108.) An owner of an abutting property bounded by the exterior line of a street, and not owning the fee of any portion of the street, has no cause of action on account of the construction, maintenance or operation of street surface railroad tracks on the street, even though such construction, maintenance or operation be unlawful and a nuisance, unless he alleges and proves special damage to his property, different from that suffered by the public at large. (*Fobes* v. *R., W. & O. R. R. Co.*, 121 N. Y. 505; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 N. Y. 98; *Rummel* v. *N. Y., L. E. & W. R. R. Co.*, 30 N. Y. S. R. 235; *Hier* v. *N. Y., W. S. & B. R. Co.*, 40 Hun, 310; *Doolittle* v. *Supervisors*, 18 N. Y. 160; *Dougherty* v. *Bunting*, 1 Sandf. 1; *Pierce* v. *Dart*, 7 Cow. 609.)

PARKER, Ch. J.     I quite agree that if all the views expressed in the opinion in *Colonial City Traction Company* v. *Kingston City R. R. Company* (153 N. Y. 540) were intended to be applicable to every conceivable case in which the tracks of one surface railroad might be used by another, then would we, indeed, be placed in an embarrassing position, as we stand confronting a statute that has been in existence since 1839, providing that " it shall be lawful hereafter for any railroad corporation to contract with any other railroad corporation, *for the use* of their respective roads, and *there-*

*after to use* the same in such manner as may be prescribed in such contract." That is precisely what the Atlantic Avenue Company undertook to do in contracting with this defendant for the use by the latter of the former company's double tracks through a portion of a certain street in the city of Brooklyn. This statute was not pressed upon the attention of the court in the *Colonial Traction Company* case, because there it was not directly involved. Instead of a contract between two railroads by which one was permitted to use some portions of the tracks of the other, that was a proceeding by the one to condemn the right to use the tracks of the other, and was, by that other, resisted to the uttermost. On a motion for a reargument the possible effect of some of the expressions made use of in the opinion, in a situation like this, was pointed out, and the court promptly gave assurance that it had not decided to override the statute of 1839, that statute not being directly involved. This assurance was furnished by an opinion written by the learned judge who had spoken for the court in the decision of the case, and he said : " It is also suggested that our opinion has raised apprehension as to its effect as a precedent upon railroad leases and traffic agreements, of which there are said to be many now in force all over the State. It was not our intention to decide any case but the one now before us, which simply involved the standing of the plaintiff to make the application in question, and our opinion should be read in the light of that purpose. If, as sometimes happens, broader statements were made by way of argument or otherwise than were essential to the decision of the questions presented, they are the dicta of the writer of the opinion and not the decision of the court."

We are thus brought to the consideration of a question which may have been incidentally written about, but has never been decided by this court. It has never been decided because it has not been involved. Aye, more than that, it has not been considered ; for there has been nothing in any situation actually presented to this court to suggest that such

a question might arise. This defendant, relying upon the statute to which we have referred, entered into a contract made in conformity with the provisions of such statute, by which it acquired the right to run its cars over some portion of the tracks of the Atlantic Avenue railroad. The plaintiff, an abutting owner, sought to restrain the defendant from enjoying the privilege for which it contracted, but the courts have so far held that the defendant's acts were entirely legal, and that the plaintiff has no legal right or interest with which the defendant interferes through the use that it makes of the tracks of the Atlantic Avenue Railroad Company. That this decision cannot be questioned on principle is certain if it be the fact that at the time of the acquisition of the franchise over the street in question by the Atlantic Avenue Railroad Company, such a statute as the act of 1839 was in existence, and was not in conflict with the Constitution or some other statutory provision. All these questions were discussed by the court in *People* v. *Brooklyn, F. & C. I. R. Co.* (89 N. Y. 75). The assignor in that case, as in this, was the Atlantic Avenue Railroad Company ; in each case the right sought to be acquired by the defendant was the right to run its cars over certain tracks of the assignor company and the justification for the contract according the right was the act of 1839 (Chap. 218, § 1). It was claimed in that case that the act of 1839, by the authority of which the contract was made, was rendered invalid by the constitutional provision of 1875 (Art. 3, § 18), continued in the revision of 1894. But the court held that the act of 1839 was unaffected by that constitutional provision, in that it did not undertake to affect existing legislation, but instead to restrict legislative power as to future legislation. Said the court : "The whole scope of the section is to dictate to the law making power what it may or may not do thereafter, what bills it may pass and what it shall not, and not at all to affect or act upon past legislation which at the time was entirely lawful."

That decision has not been questioned in the slightest degree in any case to which our attention has been called,

prior to the present review. But as it is now challenged, a brief consideration of the reasons justifying it will not be out of place.

It is conceded that the act of 1839, entitled " An act authorizing railroad companies to contract with each other," has been continued in force from the time of its enactment to the present, and is now to be found in section 78 of the Railroad Law. Upon its incorporation into section 78 of the Railroad Law by the revision of 1890, the act of 1839 was, with many other laws, in terms repealed by section 182 of the Railroad Law (Chap. 565, L. 1890). Section 182, however, declared : " The provisions of this chapter, so far as they are substantially the same as those of laws existing on April 30, 1891, shall be construed as a continuation of such laws, modified or amended according to the language employed in this chapter, and not as new enactments." Independently of this provision, under the settled doctrine of statutory construction, the effect of the revision of the statutes by a re-enactment of previous statutes would have operated as a continuance of the provisions of the former statute instead of a repeal and a new enactment. But the legislature by the provision that we have quoted, took away all opportunity for question by enacting that such revision constituted a continuation of the enactments incorporated therein. Thus is fully supported the assertion that the act of 1839 has been in full force and effect from the day of its enactment to and including the present time. The act applies to both steam and street surface railroad corporations and authorizes both traffic agreements and leases. (*People* v. *O'Brien,* 111 N. Y. 1; *People* v. *Brooklyn, F. & C. I. R. Co., supra; Woodruff* v. *Erie R. R. Co.,* 93 N. Y. 609.) It is unaffected by the provision of the Constitution that " the legislature shall not pass a private or local bill in any of the following cases." Thirteen specifications follow, one of which contains, among other things, the following : " The legislature shall pass general laws providing for the cases enumerated in this section, and for all other cases which in its judgment may be

provided for by general laws. But no law shall authorize the construction or operation of a street railroad except upon the condition that the consent of the owners of one-half in value of the property bounded on, and the consent also of the local authorities having the control of that portion of a street or highway upon which it is proposed to construct or operate such railroad be first obtained, or in case the consent of such property owners cannot be obtained, the Appellate Division of the Supreme Court, in the department in which it is proposed to be constructed, may, upon application, appoint three commissioners who shall determine, after a hearing of all parties interested, whether such railroad ought to be constructed or operated, and their determination, confirmed by the court, may be taken in lieu of the consent of the property owners." (Const. art. 3, § 18, as amended in 1874 and continued in the revision of 1894.)

Statutory enactments in existence at the time of the adoption of this provision of the Constitution were not aimed at, for the reason doubtless that chapter 140 of the Laws of 1850, section 28, subd. 5, provided that the assent of the corporation of a city was necessary to authorize the construction of any railroad upon the streets of a city, and chapter 140 of the Laws of 1854, section 1, prohibited the construction without the consent of a majority in interest of the owners of property upon the streets upon which a railroad is to be constructed. But as it was possible for the legislature to change the statutes in that respect, in the language of Judge FINCH (in 89 N. Y. 75, *supra*), "It" (the Constitution) "commands the legislature not to 'pass' a private or local, bill for certain specified purposes, and ordains that those purposes shall be accomplished through the aid of general laws, and then restrains their range by a further condition, that even by a general law the legislature shall not authorize 'the construction or operation of a street railroad' except in certain cases." The framers of the amendment to the Constitution of 1874 apparently saw no objection to the principle of the act of 1839, otherwise they would have prohibited the making of a contract with one rail-

road by another for the use of its tracks without the consent of the abutting owner.    This they did not attempt to do either in terms or by indirection, and yet they knew, or must be presumed to have known, the legislation pertaining to that general subject.    The attempt was to place restrictions upon the legislative power, but so far as the section quoted is concerned, it had relation only to the building of new roads, and necessarily to the acquisition of new franchises.    It aimed, not at the destruction of vested rights, such as the Atlantic Avenue Railroad Company had acquired in the street in front of the premises of this plaintiff, either directly by overthrowing the statute, or indirectly by compelling the assignee under the contract to obtain the consent of abutting owners.    Such consent was in fact given when the abutting owners first consented to the building of the railroad, for the consent was necessarily given in the presence of a statute declaring that the franchises would permit the corporation to contract with another railroad corporation for the use of its road.

This assertion is based upon the assumption that the Atlantic Avenue Railroad Company acquired its franchise after the passage of the act of 1854, which required the consent of the abutting owners.    We do not, however, rest our decision upon that ground, for we are not advised by the record of the date on which the Atlantic Avenue Railroad Company acquired the right to construct and operate its railroad on Bergen street, between Rogers and Nostrand avenues; but in any event, as we have already seen, both on reason and authority (*People* v. *B., F. & C. I. R. Co., supra*), the act of 1839 has not been affected by the Constitution, and hence the Atlantic Avenue Railroad Company has a right to contract with another corporation for the use of its tracks.    If the Atlantic Avenue road acquired its franchise after the act of 1854 had been passed, then the plaintiff necessarily consented to the making of such a contract, as we have already observed; if the franchise was acquired before, that road, nevertheless, became vested with the right to make such a contract by the statute of 1839.    The constitutional amendment of 1874 did not, as we have seen,

attempt to take away that right, nor did it attempt to vest in the legislature the power to take it away by legislative enactment. Those provisions had relation solely to future legislation that might affect the creation of new corporations and not the destruction of old ones, or any of the rights such corporations had secured under statutory authorization. If, then, it be true, as we shall attempt to show later that it is not, that the legislature has since the constitutional amendment of 1874 attempted to deprive the Atlantic Avenue Railroad Company and other surface railroad corporations similarly situated of a valuable part of their franchises, such legislation is unconstitutional and void.

If the purpose of the legislation under consideration was to deprive an assignee corporation of the right to use the tracks of another corporation without the consent of abutting owners, then the effect intended and actually accomplished (if the enactment be valid) is to burden what was an absolute right, with a necessity for the consents of abutting owners before the right can be made available to the assignee corporation. Such a burden in practical effect might destroy that which was originally vested in the assignor corporation as a part of its franchise, for, as the law now stands, a railroad corporation desiring to use the tracks of another railroad cannot acquire from the municipality or the abutting owners a franchise to run cars over those tracks. Every part of the franchise was given to and acquired by the corporation constructing the railroad; no part of it was retained, nor any right to carve out of it another franchise, in whole or in part. The consent of the abutting owners that one railroad corporation should use the tracks of another could not, therefore, confer or contribute towards the bestowal of a franchise, and in the event of their refusal to consent they might very well claim that the Appellate Division is not authorized to grant consent in such a case under our present statutes, and thereupon insist that they were in a position to prevent the use of the tracks by the assignee corporation until their demands should be complied with. If, however, this contention should not avail, the

Appellate Division might in the exercise of its discretion refuse to consent, and thus operation under the contract would be prevented. But if the burden were less onerous, indeed, if it were only slight, it would be beyond the legislative power to impose it.

It is well settled that a perfected railroad franchise constituted either by direct legislative grant or by consent of local authorities and property owners in pursuance of the Constitution and general laws, especially when followed by actual construction and operation, is a property right that cannot be afterwards taken away or diminished, either by subsequent constitutional amendment or by legislative or municipal action, except in the exercise of the police power or the right of eminent domain. (*People* v. *O'Brien*, 111 N. Y. 1, and cases cited.) In that case Chief Judge RUGER, at page 41 of the opinion, says: "We will refer to a few only of the statutes on this subject from which the implication arises not only that the state intended to invest these franchises with the character of property, but also to enable their mortgagees, purchasers and assigns to enjoy their use under an indefeasible title. Thus railroad corporations having been authorized to contract with other corporations for a qualified transfer of such franchises for terms unlimited except by the agreement of the parties. (Ch. 218, Laws of 1839, * * *.) * * * The statutes cited, as well as others not specially referred to, indicate the general policy of the state to render such interests independent of the life of the original corporation and transferable as property by means of judicial proceedings and otherwise, under certain restrictions not pertinent to our present purpose particularly to consider. (*People* v. *Brooklyn, F. & C. I. R. R. Co.*, 89 N. Y. 84.)"

Salability is an essential element of property, and the destruction or the diminution thereof is a taking of property that cannot be done except through the exercise of the right of eminent domain or of the police power. (*Wynehamer* v. *People*, 13 N. Y. 378; *Matter of Jacobs*, 98 N. Y. 98; *People* v. *O'Brien, supra; Roddy* v. *Brooklyn City & Newtown*

*R. R. Co.,* 32 App. Div. 311.) In the latter case the court had under consideration the question now before us, and Mr. Justice HATCH in delivering the opinion of the court well stated the conclusion necessarily resulting from his argument, as follows : " The right or privilege to contract for its use with other railroads, and thereby derive a profit, was as much a part of its franchise as was the right to lay its tracks or operate its cars. This was a source of use which made its property and franchise valuable, and the corporation could no more be deprived of this right than the right of operating in any other respect as authorized by law."

The salability of the property right in question is affected and its value diminished, if not destroyed, if the assignee thereof cannot make use of it without the consent of the abutting owners. It, therefore, follows that if the legislation under consideration on its face attempts to prevent a railroad corporation from possessing the right to contract for the use of its road with another corporation, from conferring on that other the absolute right to make such use, it is wholly without authority and void, and for that reason the judgment under review is right. But it seems to us very clear that the legislature has made no such attempt ; for there is no statute that has for its purpose the cutting down of railroad franchises so as to eliminate therefrom the element conferred by the statute of 1839. Instead of sections 91 and 102 being in conflict with section 78, they are in harmony with it, and together clearly state the legislative policy as it has been understood from the beginning by the profession and the courts. They mark out the methods for the creation of franchises, and together with other sections, measure their extent. The legislation has relation to the creation of surface railroads, not their total or partial destruction. It points out on the one hand how, if at all, a franchise to operate a street surface railroad may be obtained. One of the necessary steps is the obtaining of the consent of the municipal authorities ; another is that the consent of a majority in interest of the abutting owners shall be obtained, but if it cannot, then the consent of the Appellate

Division may be obtained in its stead, when the road may be constructed notwithstanding the refusal of the abutting owners to consent. Other sections declare the rights that are thus acquired, which together are called a franchise, and among those sections is section 78, which provides that one of the rights thus acquired is that of contracting with another corporation to lease to it the right to use its road.

Thus, somewhat in advance of orderly argument have I presented my deductions from a consideration of the whole subject. My justification, however, is in the hope that thereby the purpose of the statutes to be referred to may be more readily appreciated.

We have already seen that section 78 of the Railroad Law continued in force chapter 218 of the Laws of 1839. Indeed, we are all agreed in that respect, and it means much; for it points out that it has been the public policy in this state for a period of nearly sixty years to permit railroad corporations to contract with other railroad corporations for the use of their roads, a public policy unchallenged in any direction by the people, either through their organic law, or through statutory enactments, unchallenged directly in any case by the courts, and challenged indirectly but once. Upon the subject of the granting of similar franchises the Constitution has been the subject of amendment, and later of revision, but no single sentence can be pointed out that indicates a purpose of changing the established public policy so far as it authorizes railroad corporations to contract with other railroad corporations for the use of their roads. This section 78 of the Railroad Law, therefore, rests on sure foundation and is buttressed by many more years of influence in railroad construction than the consent of the abutting owners, which was not deemed necessary in this state prior to the year 1854. This assertion may seem strange in the light of the attempt to subordinate every other feature of the Railroad Law to that of the consent of the abutting owners; but such consent has not been for a very long time really necessary; and if it be refused, the consent of the Appellate Division may be had in its stead. Let us now look .

at the legislation upon the subject of consents. In the early history of the statutes the consent of local authorities and property owners to the construction of street surface railroads in city streets was not required. The first appearance of legislation upon that subject was a single sentence contained in subdivision five, section 28, chapter 140 of the Laws of 1850, reading as follows: "Nothing in this act contained shall be construed to authorize * * * the construction of any railroad not already located in, upon or across any streets in any city, without the assent of the corporation of such city." This subdivision was amended by chapter 582 of the Laws of 1864; but the sentence quoted was not affected, and it was continued in the General Railroad Act of 1850 without change until its re-enactment in section 91 of the Railroad Law of 1890. It was not until 1854 that the legislature saw fit to require as a condition precedent to the construction of a street surface railroad in a city, the consent of a majority in interest of the owners of property abutting upon streets; but by section one, chapter 140 of the Laws of 1854, it was provided: "The common councils of the several cities of this state shall not, hereafter, permit to be constructed in either of the streets or avenues of said city a railroad for the transportation of passengers, which commences and ends in said city, without the consent thereto of a majority in interest of the owners of property upon the streets in which said railroad is to be constructed being first had and obtained." This sentence continued in force without change until it was re-enacted in section 91 of the Railroad Law of 1890. The next general legislation upon this subject was section three, chapter 252 of the Laws of 1884, which continued in force without amendment until its re-enactment in section 91 of the Railroad Law.

Since the enactment of the General Railroad Law sections 90 and 91 have been amended by section 91, chapter 676, Laws of 1892; chapter 434, Laws of 1893; chapters 545 and 933, Laws of 1895, and by chapter 855 of the Laws of 1896. A reference to the character of the amendments will not be

serviceable, but such portions of existing sections 90 and 91 of the Railroad Law as are material to the present discussion read as follows: "§ 90. Street Surface Railroad; General Provision. A corporation organized for the purpose of building and operating or extending a street railroad, or any of its branches, for public use in the conveyance of persons and property in cars for compensation, upon and along any street, avenue, road or highway, in any city, town or village, or in any two or more civil divisions of the state, must comply with the provisions of this article."

"§ 91. Consent of Property Owners and Municipal Authorities. Such railroad shall not be built, extended or operated, unless the consent in writing, acknowledged as are deeds entitled to be recorded, of the owners of one-half in value of the property bounded on, and also the consent of the municipal authorities having control of that portion of a street or highway upon which it is proposed to build or operate such railroad shall have been first obtained."

We have thus given a review of the legislation in this state as to the necessity of consents of local authorities and property owners to the construction, maintenance or operation of street surface railroad tracks in streets. It is evident that the legislature, from the beginning to the end of this general legislation, has never intended to require consents of local authorities or property owners to the operation by one railroad company of its cars over the tracks of another railroad company by virtue of a traffic contract with such other railroad company, but that it intended to require such consents only to the construction, maintenance or operation of new railroad tracks constituting either main line, branches or extensions. Giving to the phraseology of the statutes its ordinary meaning, we have a perfectly working harmonious system, one that accords not only with the professional understanding of its purpose, but with the history surrounding the development of the different branches of the law, until finally they were consolidated into one general act. When the legislature incorporated chapter 218, Laws of 1839, into the General

Railroad Act, and provided that it should constitute a continuance of that chapter and not a repeal and re-enactment thereof, it made it perfectly clear that it was the legislative intent not only that such a right should thereafter be continued to all railroad corporations created under and by virtue of the provisions of the general law, but that it should preserve the statute from even an opportunity of controversy as to whether it was in violation of the spirit of the constitutional amendment of 1874. That amendment did not, as we have seen, affect past legislation, and, therefore, could not, by any possibility, be said to affect a provision of law upon that subject that should be continued in a general railroad law instead of being re-enacted. So, too, it continued the legislation upon the subject of the consents of the municipalities and also the legislation upon the subject of the consent of the abutting owner. It is quite evident that it was the legislative understanding that these several enactments were in harmony with each other and could stand together, and there really does not seem to be any room for questioning it; but if there were, it would be the duty of the courts to harmonize the enactments. No such effort, however, is needed. By the General Railroad Law, in order to acquire the right to construct, extend or operate a railroad upon a public street, there must be obtained, *first*, consent of the municipal authorities; *second*, consent of a majority in interest of the abutting owners, or, if that cannot be had, the consent of the Appellate Division. When these consents have been obtained and the railroad corporation obtaining them has in all other respects complied with the commands of the General Railroad Law, it acquires what is known as a franchise, and one of the important features of that franchise consists in the right to contract with another corporation for the use of its tracks, which right becomes a part of the franchise.

Thus reading together the several sections of the Railroad Law, and we see no other way in which they can possibly be read except by eliminating absolutely from consideration the oldest and most firmly grounded of all the statutes we have

referred to, we come necessarily to the conclusion that the court below was right in holding that the Atlantic Avenue R. R. Co., when it acquired its franchise, secured as a part of it the right to contract with another railroad company to use its tracks, a right that neither the municipality nor the abutting owner could take away or impair.

Already our consideration of the general subject has proceeded to unreasonable length, but it may not be out of place to state the point of divergence resulting in such totally different views. On the one hand the underlying idea is that in order to run over the tracks of another railroad, a railroad corporation must acquire a new franchise for that particular purpose, which, if true, would necessarily require the consent of the municipality and the abutting owners; while on the other hand it is that such railroad acquires a franchise as to streets upon which it constructs its railroad, but its right to use the tracks of the other railroad it gets by contract with the corporation owning the franchise and all of it, which includes by the express terms of the statute the right to make a contract for such use.

Let us stop a moment to see what is involved in the claim that a new franchise is required to operate on the tracks of another railroad. (1) It necessarily denies that the constructing railroad obtained by its franchise all that the statute provided for. (2) It assumes that there can be more than one franchise over the same right of way, and indeed as many franchises as there might be railroad corporations desiring its use. (3) That the right to confer it was reserved to the abutting owner, notwithstanding the statute positively declared it should pass to the constructing railroad. (4) That what the statute granted was not an absolute right, but something which might ripen into one provided the necessary consents could be obtained, notwithstanding the absence of a sentence, phrase or word suggesting such a limitation. (5) That the right to contract for the use of its property conferred by the statute upon the constructing railroad is not interfered with by enjoining every other railroad corporation from making use

of the tracks, although a contract for that purpose be obtained. That such a holding would be of far-reaching effect no one can doubt. That it would confer as a right that which at present is but a shadow, and deprive others of rights vested as firmly and as sacredly as any of the rights we treasure and enjoy, there can be no doubt. And where is to be found the basis for this radical change in the well-understood law of the state, this claim that notwithstanding the statute invests a corporation with such a right, it is not available, because section 91 of the statute provides that "A street surface railroad, or extensions, or branches thereof, shall not be built, extended or operated unless the consent in writing * * * of the owners of one-half in value of the property" be obtained. The words "or operate" in that sentence are seized hold of to the exclusion of all the other portions of the Railroad Law, to destroy the right expressly conferred by another section. There is no rule of construction which will permit a court to give these words such an effect. The history which occasioned the incorporation of the words "or operate" does not suggest that it was intended for such a situation as we have here presented; on the contrary, it is well known that early in the history of street surface railroad building it was quite common to construct extensions on Sundays or legal holidays, and then for the managers to say, "What are you going to do about it? You can't tear up our tracks and you can't prevent us from using what is our own." Hence, a mandate of the Constitution and a statute depriving a corporation of any advantage by reason of such construction by denying to it the right to operate in the absence of consents. The statutes, considered together, as we have already pointed out, show that it was intended to apply to the creation of new franchises, and the language employed is entirely appropriate to that end, and as thus construed it is in harmony with section 78. Special attention is called to section 102 of the Railroad Law as clearly indicating the legislative understanding of the sense in which the words used by it were employed. It prohibits a street surface railroad corporation from "constructing, extend-

ing or operating " its road in any portion of a street in which there is already a street surface railroad, without the consent of the latter corporation, but authorizes it to use the tracks of the other street surface railroad for a certain distance upon condemning the right to do so by proceedings in court. A franchise, in the full sense of that term, to operate in such a street, cannot be obtained without the consent of the other corporation, the municipal authorities and abutting owners. But something that the corporation has can be obtained, viz., the right to run cars over its tracks in that street, and this by condemnation proceedings.

The point of view from which it is possible to see in the words " or operate " such portentious meaning as to cause them to override and destroy rights vested by virtue of the command of solemn statutory enactments is taken through sympathy for the abutting owner. No statute has ever, in terms, conferred upon him an absolute right to prevent the operation of cars. He never had any consideration in the premises under the laws of this state until the act of 1854, and from that day to this his refusal to consent has been of no avail if, in the judgment of the Appellate Division, the public interest required that a railroad should be constructed. But it is said that the language of the statute that was intended to measure out just the amount of consideration that should be paid to him does not do so in fact, because the potency of the words " or operate " enables him to claim as a right that he can prevent the use of the tracks in front of his premises by a new railroad under a contract with the old railroad, to whose construction he had consented.

In no judicial opinion reaching such a conclusion have the provisions of the act of 1839 (now section 78 of the Railroad Law) received consideration, and it is submitted that when read in connection with the other provisions of the Railroad Law, as it is the duty of the court to do, and read for the purpose of ascertaining the true intent and meaning of the several provisions, the conclusion must be reached that this defendant has the right to use the tracks on the block in

question by contract with the Atlantic Avenue Railroad Company.

The judgment should be affirmed, with costs.

GRAY, J. Although I was not present when the *Colonial City Traction* case was decided (153 N. Y. 540), I should yield a loyal obedience to its authority, however much I might differ in my views from those expressed in that decision, if I thought it foreclosed the discussion in the present case. But I think it does not do so, and that the question of the effect of the act of 1839 is now so presented, under the facts, as to enjoin upon us, not a nullification of what was decided in the former case, but a consideration of whether the right possessed by a street railway company to contract with another for the use of its track, has been abrogated. The former case did not, necessarily, involve the present question. The opinion of the chief judge has pointed out the distinction between the cases and I feel myself free to concur with him in the conclusions which he has reached.

VANN, J. (dissenting). On the 25th of October, 1894, the plaintiff, an abutting owner upon Bergen street, in the city of Brooklyn, brought this action to restrain the defendant, a domestic corporation organized under the General Railroad Act of 1890, from constructing, operating or maintaining a surface railroad through Bergen street in front of his premises, upon the ground that it had not obtained the consent of the property owners as required by law.

Upon the trial it appeared that on the 19th of June, 1894, the defendant received the consent of the local authorities of said city to construct and operate a street railroad through several streets, including one block on Bergen street, upon condition that it should comply with all the provisions of the Railroad Law, but it had not obtained the consent of a majority of the property owners on said block or of the Appellate Division of the Supreme Court to the construction or operation of said road thereon. The Atlantic Avenue Rail-

road Company, organized in 1872, had for many years prior
to the commencement of this action operated a double-track
street surface railroad along Bergen street in front of the
premises of the plaintiff, who owned no part of the street.
On the 13th of October, 1894, an agreement was entered into
between the defendant and the Atlantic Company, which,
among other things, provided that " the Nassau Company, for
the purpose of *operating* its railroad on said portion of Ber-
gen street (being the part in question) may use the tracks and
wires of the Atlantic Company thereon, and may, upon and
along said portion of Bergen street, place and maintain its
feed wires upon the poles of the Atlantic Company, and shall
pay the Atlantic Company a proper rental for such use of
said tracks, wires and poles."  After the commencement of
this action, and on the 2d of November, 1894, a second agree-
ment was entered into between said companies, which pro-
vided that " the cars of the Nassau Company may be *moved
over* the tracks of the Atlantic Company on Bergen street
(through the block in question) and the Atlantic Company
agrees to furnish the power to move the said cars on said por-
tion of Bergen street.  The Nassau Company agrees to pay
the Atlantic Company annually for the use of said tracks and
power such sum as the parties hereto may hereafter agree
upon, and if they fail to so agree, the annual compensation
shall be determined as provided in section 102 of the Rail-
road Law."

The action was tried at a Special Term of the Supreme
Court, and the justice presiding held that the defendant,
under " an agreement," not specifying which, had " the legal
right to operate its railroad over the tracks of the Atlantic
Avenue Railroad Company in Bergen street * * * not-
withstanding the property owners upon Bergen street * * *
have not given their consent to the construction and opera-
tion of the defendant's railroad ; that the proposed *operation*
by the defendant of its railroad on Bergen street is lawful,
and that the plaintiff is not entitled to an injunction enjoining
and restraining the defendant from such *operation ;* that the

defendant, not having the consent of the property owners on Bergen street, * * * is not entitled to *construct* a railroad thereon," and judgment was directed accordingly, without costs to either party.

The trial court thus held that the consents of abutting owners were not required for the operation of a street railroad as distinguished from the construction thereof, and the General Term affirmed the judgment, one of the learned justices dissenting.

There is no dispute as to the facts, and the question presented for us to determine is whether the defendant had a legal right as against the plaintiff, under the circumstances stated, to operate its railroad upon the tracks of the Atlantic Avenue Company, through that portion of Bergen street passing in front of the plaintiff's premises. The determination of this question requires us to consider section 18 of art. 3 of the Constitution, chapter 218 of the Laws of 1839, and several sections of the Railroad Law.

Said section of the Constitution provides that " the legislature shall not pass a private or local bill in any of the following cases." Then follow thirteen specifications, and, among others this: " Granting to any corporation, association or individual, the right to lay down railroad tracks." After this enumeration the section provides that "the legislature shall pass general laws providing for the cases enumerated in this section, and for all other cases which in its judgment may be provided for by general laws. But no law shall authorize the construction or *operation* of a street railroad except upon the condition that the consent of the owners of one-half in value of the property bounded on, and the consent also of the local authorities having the control of that portion of a street or highway upon which it is proposed to construct or operate such railroad be first obtained, or in case the consent of such property owners cannot be obtained, the Appellate Division of the Supreme Court, in the department in which it is proposed to be constructed, may, upon application, appoint three commissioners who shall

determine, after a hearing of all parties interested, whether such railroad ought to be constructed or operated, and their determination, confirmed by the court, may be taken in lieu of the consent of the property owners." (Const. art. III, § 18, as amended in 1874 and continued in the revision of 1894.)

The statute of 1839, entitled "An act authorizing railroad companies to contract with each other," provides that "it shall be lawful hereafter for any railroad corporation to contract with any other railroad corporation for the use of their respective roads, and thereafter to use the same in such manner as may be prescribed in such contract." (L. 1839, chap. 218.) While this act was repealed in 1890, the repealing statute provided that the provisions of the Railroad Law, so far as they are substantially the same as those of laws previously existing, "shall be construed as a continuation of such laws, modified or amended, according to the language employed in this chapter and not as new enactments." (L. 1890, chap. 565, § 182.) By section 78 of the Railroad Law, the provision already quoted from the act of 1839 is repeated *in hæc verba*. Section 90 of the Railroad Law, so far as now material, is as follows: "The provisions of this article shall apply to every corporation which under the provisions thereof, or of any other law, has constructed or shall construct or operate, or has been or shall be organized to construct or operate, a street surface railroad, or any extension or extensions, branch or branches thereof, for public use in the conveyance of persons and property for compensation, upon and along any street, avenue, road or highway, in any city, town or village, or in any two or more civil divisions of the state, must comply with the provisions of this article." (L. 1890, ch. 565, § 90; L. 1893, ch. 434, § 90.)

Section 91, the next in order, provides that "a street surface railroad, or extensions or branches thereof, shall not be built, extended *or operated* unless the consent in writing, acknowledged or proved as are deeds entitled to be recorded, of the owners of one-half in value of the property bounded on, and also the consent of the local authorities having con-

trol of that portion of a street or highway upon which it is proposed to build or operate such railroad, shall have been first obtained." (Id.) The rest of said sections are not material in this controversy, nor are the amendments passed in 1895 and 1896. (L. 1895, ch. 545; L. 1896, ch. 855.)

Section 102 prohibits street surface railroad corporations from constructing, extending or operating their roads or tracks in that portion of any street in which there is already a street surface railroad without the consent of the corporation owning and maintaining the same, except that any street surface railroad company may use the tracks of another street surface railroad company for a certain distance, varying with the population of the place where it is located, upon condemning the right to do so by proceedings in court. These are all the provisions of the Constitution or statutes that are regarded as material to the determination of the question before us.

The act of 1839 must be regarded as having been continuously in force from the date of its passage until the present time, for although that statute has been repealed in form it has been continued in fact by consolidation with many others in the comprehensive act now known as the Railroad Law. The statute of 1839, in connection with the constitutional amendment above quoted, received consideration from this court in *People · v. Brooklyn, Flatbush & Coney Island Railway Company* (89 N. Y. 75), where it was held that said act was not affected by the constitutional provision, which prohibits future legislation only, without reference to previously existing laws. In no other respect is that case regarded as analogous to the one before us, for it was an action brought by the state through its attorney-general to restrain the defendant therein from running its cars upon Atlantic avenue in the city of Brooklyn. There was no defendant except the railroad proceeded against. The abutting owners were not parties, and their rights were not passed upon. On page 91 the court said : " It is the state which sues. No private citizen is seeking to vindicate his individual rights. That would present a very different case from the one before us. It is the

state, representing the whole people, which seeks to restrain the defendant from exercising the right which the state, representing the whole people, expressly conferred." The case of *People* v. *O'Brien* (111 N. Y. 1) was also brought by the attorney-general, while *Beveridge* v. *New York Elevated Railroad Co.* (112 N. Y. 1) was brought by a stockholder, and in neither were the rights of abutting owners involved.

The act of 1839 was doubtless passed with reference to steam railroads only, as no other kind was then in existence. It is questioned whether, as continued in force by section 78 of the Railroad Law, it has any other application, for it is not found in the article entitled "Street Surface Railroads." Assuming, however, that it now has a general application, the question remains whether the defendant, by virtue of its agreement with the Atlantic Avenue Company, can run its cars over the tracks of the latter in Bergen street, without the consent of the abutting owners, or the approval of the Supreme Court. As stated in another form, the question is whether the running of its cars through its own operating agents by means of the power furnished by the Atlantic Company on the tracks of the latter, is operating its road, and if so, is such operation prohibited by Constitution or statute, except on compliance with the conditions mentioned?

In *Colonial City Traction Company* v. *Kingston City Railroad Company* (153 N. Y. 540) we held that "the use, by a street surface railroad company, of a few hundred feet of the intervening tracks of another company, to form a connection between the main portions of its own track, over which to run its own cars and transport its own passengers as part of a continuous route," was "an 'operation' of its road, within the meaning of the provisions of the Constitution and of the statute." The question there presented was whether the Colonial Company could condemn the right to use the tracks of the Kingston Company to connect main portions of a line to be operated as an independent railroad without first obtaining the consent of the local authorities and the abutting owners. That case is, therefore, analogous to this, to the extent of

determining what is meant by the phrase "operating a railroad." In discussing that question we said, "If the appellant shall finally succeed in acquiring the right to run its cars for a short distance on the respondent's tracks, it will still be operating its own railroad, not that of another company, over that part of its route as well as any other. It clearly would not be operating the respondent's railroad, but using a portion of the tracks of the respondent to operate its own railroad. Two different companies cannot operate the same railroad at the same time, although both may use the same track in part to operate their respective roads. When the statute provides that ' any street surface railroad company may *use* the tracks of another street surface railroad company' upon certain conditions, permission to ' use the tracks' implies use for the purpose of operating its cars thereon. Manifestly no other use is intended. A railroad is none the less in operation between two points because it runs its cars for a part of the way over the tracks of another road. When a railroad corporation acquires the right to run its cars over a street, whether upon its own track or that of another, that right becomes a part of the railroad, and in exercising that right the corporation operates its own road. The operation of a railroad includes the running of cars, and when a company runs its own cars, receives its own passengers and collects its own fares over a continuous route of four miles, and all the trackage belongs to it except a connecting link of a few hundred feet in the middle, which it acquires the right to use through the power of eminent domain, we think it is to be regarded as operating its own railroad over the entire route, within the meaning of the Constitution and the statute. The prohibition is in the disjunctive and is directed against operation the same as it is against construction."

While in discussing that case language was used not applicable thereto, because it was a case of condemnation, but applicable to a case like this where there is a consent by one railroad to permit another to use its tracks, still the language above quoted was directly applicable and germane to the case

then in hand. Upon the reargument we limited the effect of the decision to proceedings *in invitum* to acquire the right to use the connecting track of another company, but in no other respect did we modify our previous conclusion. (154 N. Y. 493.) There is no difference between the two cases so far as the meaning of the word " operation " is concerned, except that in this case the power is furnished by the company owning the tracks, while in that case it was to be furnished by the company running the cars. I think the decision was correct, and that unless it is distinctly overruled in an essential feature, we are bound to hold that the defendant under its agreement with the Atlantic Avenue Company was to operate its own railroad through that portion of Bergen street in question. It adopted the tracks of that company as its own for the purpose of operating its railroad. If running cars is not operating a railroad it is difficult to understand what the statute means by " operate " or " operated." As it was not to operate the Atlantic Avenue railroad, what road could it operate except its own ?

The courts below have held that a street surface railroad may be operated upon a public street without the consent of a majority of the abutting owners or of the Supreme Court, notwithstanding the command of the Constitution and the Railroad Law. As we said in the *Kingston* case, " the consent required is not simply to the laying of the tracks, but also to the operation of the road. * * * An abutting owner might be willing to permit one company to operate its line through the street in front of his property, which would involve the passage of but three or four cars an hour, but not be willing that several companies should have that privilege, which might involve the passage of a car every two minutes. It is not the laying of tracks but the running of cars that constitutes the chief burden, both upon the street and the property of the abutting owners. Consent to the burden of one road should, in reason, be limited to that road with whatever increase of business it may have, but should not be extended to as many roads as can crowd their cars into operation upon the street. It

would be an unreasonable construction to hold that this is what the public authorities or the private citizens intend when they consent to the building and operation of a street railroad. Instead of an advantage to the public or to those owning property on the street, which is the inducement to obtain consent, it might result in a heavy and unexpected burden upon both, without any power to prevent it, and yet with no intention to consent to it. It would be a perversion of the consent given by extending it far beyond the intention of the parties."

I do not wish to retreat from the position thus taken, which was concurred in by every member of the court who took part in the decision.

The legislature had the power to prevent railroad companies from operating their roads without first obtaining the consents of the abutting owners, for it has all the power of legislation that the people can grant except as it is restrained by the Constitution, which contains no prohibition upon the subject. (*Koch* v. *Mayor*, etc., 152 N. Y. 72, 75.) The legislature exercised that power in the very act under which the defendant was organized, and the restriction was, therefore, a part of the charter which gave it the right to exist. By accepting the charter it became bound to comply with all the provisions of the Railroad Law applicable to corporations of its class. The prohibition was clear and distinct, for section 91 provides that a street surface railroad "shall not be built, extended *or operated*" without the required consents. The operation of the road is as distinctly forbidden as the building or extension thereof. It is impossible to separate the prohibition from any one of the three acts of building, extending or operating without violence to the language used. If a railroad cannot be built without the consents, it cannot be operated without the consents. The command of the statute applies with the same force to the one act as to the other. We have no power by construction to strike any of the forbidden acts from the statute, but it is our duty to give equal force to each. A forced construction weakens respect for the law and impairs the confidence of the public in the courts.

It is, however, contended that the right of the Atlantic Avenue Company to contract, under the act of 1839, for the use of its tracks by another road, was a property right of which it could not be deprived except by the power of eminent domain or the police power.

If the contract had been made between the two roads before the passage of the act requiring consents as a condition precedent to the operation of the defendant's road, a different question would have arisen, as to which I express no opinion. In this case, however, the prohibition was in force not only before the traffic agreement was made, but before the defendant was in existence, and it has no right to enter into the agreement without complying with the condition required by its charter. The Atlantic Avenue Company is not a party to this action, and its rights are not involved. If the legislature had the right to create the defendant, it had the right to restrict its power in any way that it saw fit, either by wholly preventing it from making certain kinds of contracts, or by preventing it from making them except upon a prescribed condition. A corporation can make no contract whatever, except through the permission, express or implied, of the legislature. It is a "mere creature of law," and has no powers except those conferred by statute, either specifically or by necessary implication. When the legislature created the defendant it had the right to prevent it from operating its railroad, under a traffic agreement or otherwise, without the consent of the abutting owners or the procedure in court authorized in lieu thereof.

It is contended that if we hold that a traffic agreement cannot be made between two surface railroad companies so that one may operate its railroad over the tracks of the other without the consent of the abutting owners, the precedent will injure the value of railroad properties as well as the bonds secured by mortgages thereon in the hands of purchasers in good faith.

The argument based upon inconvenience does not change

61

the meaning of the statute, although in a case of doubtful construction it is worthy of attention. The meaning of section 91 of the Railroad Law, however, is not doubtful, and if the managers of street railroad corporations have misunderstood or disregarded it, the evil should be at once arrested. Moreover, those who have made investments in street railroads are not alone to be considered, but the thousands of abutting owners whose property is diminished in value by the constant running of cars before their doors are also entitled to consideration. The capital invested in street railroads is small when compared with the capital invested in homes that are disturbed, as well as accommodated, by the great traffic on these roads. The rights of both classes of investors are to be considered, but it is for the legislature, under the Constitution, to so regulate their rights as to do the most good with the least harm. We must take the law as it is written, and as we require obedience from others, must obey it ourselves. The legislature has not left the railroads in the hands of abutting owners, but in lieu of their consent, has provided a reasonable substitute through judicial proceedings, and it is safe to assume that the railroad companies are quite as capable of taking care of themselves as the abutting owners. It is our province to declare the law, and I think we should discharge that duty in this case by holding that the Railroad Law prohibits the defendant from operating its road upon the tracks of another company, through a public street, without first obtaining the consents required by that act.

The judgment should be reversed and a new trial granted, with costs to abide the event.

Parker, Ch. J., reads for affirmance. All concur (Gray, J., in memorandum, and Bartlett and Martin, JJ., in result), except Vann, J., who reads for reversal.

Judgment affirmed, with costs.