## CITY OF NEW YORK v. FULTON ST. R. CO.

(Supreme Court, Appellate Division, First Department. March 5, 1909.).

TAXATION (§ 153*)—STREET RAILROADS—GROSS EARNINGS TAX.

Under Laws 1884, p. 309, c. 252, and Railroad Law (Laws 1890, p. 1111, c. 565) § 95, requiring every corporation constructing or operating a railroad to pay a specified percentage of its gross earnings, a street railroad company which assumed the obligations of a company acquiring a franchise stipulating for the payment of a specified percentage of its gross receipts in addition to the percentage payable under the Laws of 1884, and providing that, in computing any percentages, the amount shall be computed on fares received from passengers who shall ride .on any part of the route described, etc., must pay on its receipts derived from the operation, under trackage agreements, of tracks built and owned by other companies.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 153.*]

Appeal from Trial Term, New York County.

Action by the City of New York against the Fulton Street Railroad Company. From a judgment (59 Misc. Rep. 630, 112 N. Y. Supp. 494) in favor of defendant, plaintiff appeals. Reversed and rendered.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Terence Farley, for appellant.

Joseph P. Cotton, Jr., for respondent.

INGRAHAM, J. The defendant was incorporated under chapter 252, p. 309, Laws 1884. By section 8 of that act it is provided that:

"Every corporation incorporated under, or constructing or operating a railroad constructed or extended under the provisions of this act * * * shall * * * after the expiration of said five years make a like annual payment into the treasury of said respective cities, for the credit of said sinking fund, of five per cent., instead of three per cent. of said gross receipts."

By section 1, c. 642, p. 919, Laws 1886, it was provided that the right, franchise, and privilege of using a street in an incorporated city should be sold at public auction .to the bidder who would agree to give the largest percentage per annum of the gross receipts of said company or corporation with adequate security. After that act took effect, the North & East River Railroad Company applied to the common council ·of the city of New York for permission to construct, maintain, operate, and use a street surface railroad from Fulton street at the East river, through Fulton street, with double tracks to Broadway, across Broadway and through Fulton street, with double tracks to West street; thence along West street, to Cortlandt Ferry, also running along West street to Chambers Street Ferry. Acting on this application, the common council passed a resolution which provided that the right and franchise so applied for should be sold at public auction to the bidder who would agree to give the largest percentage per annum of its gross receipts. Pursuant to·this resolution, the franchise was on May 31, 1887, sold at public auction, and was bought in by the North & East River Railroad Company, that company agree-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ing to pay to the plaintiff 35 per cent. of the gross receipts in addition to the percentages payable under chapter 252, p. 309, Laws 1884, that percentage being 3 per cent. for the first five years and 5 per cent. for the subsequent years; and on June 22, 1887, an agreement under this resolution of the common council and the sale in pursuance thereof was executed by the corporation and by the city, and thereupon a permit was issued by the city to open Fulton street between West and South streets for the purpose of building a double-track railroad. At the time this permit was granted, there was in some portion of Fulton street a single track and a double track in West street over the route granted to the North & East River Railroad Company operated by other railroad companies. After this franchise had been granted, and between 1887 and 1890, the North & East River Railroad Company constructed a street surface railroad in Fulton and West streets. It constructed a single track in the portion of the street in which a single track had before existed, and changed the tracks of the existing roads so as to allow room for a double track in the street, and upon these two tracks since that time it and its successors have operated the railroad, using the tracks of the other roads in the street. On October 18, 1895, when it transferred its railroad and franchise to the defendant, the learned trial court held that it was the intention of the statute that percentages should be paid only upon a track that the railroad obtaining the franchise built under the law, and, where a franchise was in operation upon a track built by another road, there is no obligation to pay the percentage; and from that determination the city appeals.

On May 1, 1891, the revised railroad law (Laws 1890, p. 1082, c. 565), went into effect. It repeals chapter 252, p. 309, Laws 1884, and chapter 642, p. 919, Laws 1886, but it was provided that a repeal of a law shall not affect or impair any act done or right accruing, accrued or acquired, or liability, penalty, forfeiture, or punishment incurred prior to May 1, 1891, under or by virtue of any law so repealed, but the same could be asserted, enforced, prosecuted, or inflicted as fully and as to the same extent as if such law had not been repealed. The North & East River Railroad Company in 1895 petitioned for a release and compromise of the agreement made on June 2, 1887, providing for the payment of 35 per cent. of its gross earnings in addition to the percentages required to be paid by chapter 252, p. 309, Laws 1884, and in accordance with that petition on June 25, 1895, an agreement was made between the sinking fund commissioners and the North & East River Railroad Company, whereby, in consideration of the sum of $6,000, all arrears of taxes or percentages were released and discharged, and the obligation of the railroad company under the agreement of June 2, 1887, was compromised and released to the extent that the percentages therein provided to be paid should be fixed and adjusted for the future at the sum of one-eighth of 1 per cent. per annum upon the gross receipts of the North & East River Railroad Company, in addition to the 5 per cent. required under chapter 252, p. 309, Laws 1884, the agreement providing that the said sum of one-eighth of 1 per cent. upon the gross receipts of the said railway company to be the sum which the railroad company should

pay to the plaintiff for the right to use the said franchise and operate the said railroad in the future, instead of the sum of 35 per cent., as provided in said agreement, and, on the transfer of the railway to the defendant, a corporation organized under section 3 of the stock corporation law (Laws 1892, p. 1825, c. 688), the defendant became subject to all the provisions, duties, and liabilities imposed by law on the corporation, the North & East River Railroad Company. The court found that from 1903 to 1905, inclusive, the years for which this liability was sought to be enforced, the defendant operated a line of cars through Fulton street from Burlingam Slip through South street into Fulton street, and then through Fulton to West street into Barclay street and the Cortlandt Street Ferries over the lines constructed.

I think it clear that, under the agreement with the city of New York under which this franchise was acquired, it was obliged to pay 5 per cent. of the gross receipts from the exercise of the franchise granted. In addition to the obligation under the act of 1884, it was required to pay the amount bid at the public sale as modified by the agreement with the city. The obligation to pay is imposed by chapter 252, p. 309, Laws 1884, and its agreement with the city under which it acquired its franchise. By the resolution granting the consent, it is first provided that the provisions of chapter 252, p. 309, Laws 1884, pertinent thereto, shall be complied with, and the franchise was to be sold at public auction to a bidder which should be an incorporated railroad company which would agree to give the largest percentage per annum on its gross receipts. The seventh clause of this resolution provides that:

"In computing any percentages upon gross receipts that may hereafter become payable, the amount thereof shall be computed upon a fare of five cents as having been received as part of the gross receipts from every passenger who shall ride upon any part of the route hereinabove described, and irrespective of the fact whether such passenger enters or leaves the car at any point upon the said route."

And by section 8, c. 252, p. 312, Laws 1884, it is provided that every corporation constructing or operating a railroad under the provisions of the act shall pay into the treasury of the said respective cities in which its road is located to the credit of the sinking fund thereof 5 per cent. of its gross receipts. It was under the provision of this act that the corporation received a franchise to run its cars in these streets. The right to build the road or construct the tracks was preliminary to the right to occupy the street for the purpose of the franchise; and the Legislature had provided that, as a compensation for the use of the streets of the city, the corporation should pay this percentage. It seems to me to be immaterial whether the defendant exercised its franchise on tracks which it built or on tracks of existing roads in the streets the right to use which it had acquired. The essential part of the grant was a franchise to use these streets, not to build the tracks, but to operate, conduct, and maintain a railroad, and it exercised that franchise just as much by using the tracks of other railroads in the streets as by using tracks that it had constructed. It did not acquire from the other roads under the trackage agreement or other arrangement a franchise to use the street, but acquired that right directly

from the people of the state who had imposed upon it an obligation to pay to the city a certain percentage of its gross earnings as a condition of the use of the franchise granted.

The court below seems to have relied upon the case of Ingersoll v. Nassau Electric R. Co., 157 N. Y. 453, 52 N. E. 545, 43 L. R. A. 236; but it certainly was not decided in that case that a franchise granted and accepted by a railroad company to run its cars through a particular street upon paying compensation for the use of the street was not required to pay because of the fact that it had also acquired the right to use the tracks of another railroad in the street so as to avoid the necessity of laying additional tracks of its own. The real question discussed and decided in that case was whether a right to use the tracks of one corporation acquired by another had to be consented to by the abutting owners before such right could be effective, and it was assumed in that the franchise to operate the road must first be obtained from the state before a corporation by a contract with another railroad obtained a right to use a particular street. It is said in the opinion:

"By the general railroad law, in order to acquire the right to construct, extend, or operate a railroad upon a public street, there must be obtained, first, consent of the municipal authorities; second, consent of a majority in interest of the abutting owners, or, if that cannot be had, the consent of the Appellate Division. When these consents have been obtained and the railroad corporation obtaining them has in all other respects complied with the commands of the general railroad law, it acquires what is known as a franchise, and one of the important features of that franchise consists in the right to contract with another corporation for the use of its tracks, which right becomes a part of the franchise."

It may be that under section 102 of the railroad law, after a franchise is granted, before it could be operated where there were tracks of another street surface railroad in a street which was a part of its route, it would have to obtain the consent of the other corporation; but there is nothing in this provision to indicate that the consent of the other railroad itself granted a franchise. There is nothing in section 95 of the general railroad law which can be construed in relieving the defendant from this obligation.

I think, therefore, that the judgment must be reversed, and judgment entered for the plaintiff for the amount claimed, with costs in this court and in the court below. All concur.