## BARNETT v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. July 23, 1900.)

1. STREET RAILWAYS—USE—LIENS—TWO FARES.

Railroad Law, § 101, declares that no corporation constructing a railroad under that act, or under Laws 1884, c. 252, shall charge more than five cents for one continuous ride from one point on the road, or from a point on any road, line, or branch, operated by it and under its control, to another, or to a point on any connecting line within the limits of any village, the act not to apply to any road constructed and in operation prior to 1884. *Held*, that where defendants, owners of an electric line, leased a line run by steam, which had been in operation since 1879, and connected the two, and operated both as electric lines, they had a right to charge a five-cent fare on each line for a continuous trip over both, since the act restricting the fare to five cents has no application to street railways constructed and in operation prior to 1884, or to any road operated by steam.

2. SAME—RIGHT OF LESSEE—ADDITIONAL FARE.

Under Laws 1892, c. 676, authorizing any railroad corporation to contract with any other such corporation for the use of their respective roads, where defendants, owners of an electric line, leased a line run by steam, which was constructed and in operation prior to 1884, and connected the two, and operated both as electric lines, defendants, under their lease, acquired the power to charge a five-cent fare on the leased line, in addition to a fare on its own line, for a continuous trip over both lines, notwithstanding Railroad Law, § 101, limiting charge to five cents for continuous ride over company's entire system, since, if the defendant had operated the leased road independent of its own, it could have charged a fare on the leased line.

Submission of a controversy between Arthur Barnett and the Brooklyn Heights Railroad Company. Judgment for the railroad company.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

John W. Hutchinson, Jr., for plaintiff.

Charles A. Collin (William F. Sheehan, on the brief), for defendant.

HIRSCHBERG, J. This is a submitted controversy upon an agreed state of facts, the plaintiff claiming damages, stipulated at $65, for alleged overcharges of fares at various times, and for being ejected from one of the cars of the defendant for refusing to pay an alleged excessive fare. The defendant was incorporated as a street-railroad company in 1887, under the provisions of chapter 252 of the Laws of 1884, and the question involved is whether it has a right to collect two fares, of five cents each, for one continuous trip over its entire route, known as the "Third Avenue & Sea Beach Route," and embracing not only two separate and distinct lines of railroad, leased and operated by the defendant, but two separate and distinct kinds of railroad, one known as the "Third Avenue Line," a street surface railroad, and the other known as the "Sea Beach Railroad," a steam railroad. The Third avenue line was constructed as a surface street railroad, and extended from the Brooklyn terminus of the New York and Brooklyn Bridge, through the former city of Brooklyn, and through a portion of the former town of New Utrecht. It is constructed altogether upon the streets and highways of the present city of New York, borough of Brooklyn. The lease of this line was acquired by the de-

fendant in 1895, and the line has ever since been operated by it as a trolley road. The Sea Beach Railroad is a steam surface railroad, constructed in the year 1879 by a steam railroad company, organized for that purpose, and it extended from the harbor or bay of New York through the former towns of New Utrecht and Gravesend, to Coney Island, crossing the route of the Third avenue line at the intersection in Brooklyn borough of the present Sixty-Fifth street with Third avenue. This railroad is also, of course, wholly within the present city limits. It is constructed altogether upon a private right of way acquired in fee, excepting where it crosses highways in the ordinary manner of steam railroad highway crossings. It has been continuously operated as a steam railroad from the time of its construction until it was leased by the defendant, and none of the corporations by which it has been owned has ever acquired the right to extend the road or to construct branches under the provisions either of chapter 252 of the Laws of 1884 or article 4 of the railroad law. In November, 1897, the company then and now owning the road leased it to the defendant for one year, by a written lease covering and including the railroad property, rights, privileges, and franchises, and this lease has since been annually renewed. In November, 1897, after acquiring the lease, the defendant joined the tracks of the Third avenue line and the Sea Beach Railroad at the point of their intersection, transformed the Sea Beach Railroad into a trolley road, and has ever since operated its Third avenue and Sea Beach route over both lines, as one continuous route of travel from the river to the sea.

Chapter 252 of the Laws of 1884 was passed on the 6th day of May, 1884, and was a general law, entitled "An act to provide for the construction, extension, maintenance and operation of street surface railroads." It was designed to secure uniformity in the creation and government of such corporations, which, prior to that time, had been created under special acts, giving special rights and privileges in respect to rates of fare and other matters. This act has since been revised, and its provisions, with subsequent amendments, are now contained in the railroad law (chapter 565, Laws 1890, as amended by chapter 676, Laws 1892), and comprise article 4 of that law. The provision by virtue of which the plaintiff claims that the defendant is precluded from charging more than one fare is contained in section 13 of the act of 1884, and in the revision is embodied in section 101 of the Railroad Law as amended. Section 13 of chapter 252 of the Laws of 1884 is as follows:

"Sec. 13. No company or corporation incorporated under, or constructing and operating a railroad under the provisions of this act, shall charge any passenger more than five cents for one continuous ride from any point on its road or on any road or line or branch operated by it or under its control to any other point thereon or on any connecting branch thereof within the limits of any incorporated city or village. This section shall not be construed to apply to any part of any road heretofore constructed, and now in operation, unless such company shall acquire the right to extend such road, or to construct branches thereof under the provisions of this act, in which event its rate of fare shall not exceed its authorized rates prior to such extension."

Assuming, but without deciding, that the language of this section is broad enough to limit a railroad company to the collection of a

single fare for a continuous ride over two or more separate and distinct railroads constructed by separate companies, and subsequently united in operation by lease or purchase into a single connected system, it.is evident that the prohibition, as enacted, had no relation to the Sea Beach Railroad. That road was constructed prior to the passage of the act, and was then in operation. Moreover, it was a steam railroad, and the act related to street railroads only. The exclusion from the operation of the section, it is to be noted, is not to the railroad company whose road was then constructed and in operation, but was to the road itself. The section limiting the right to charge fare, the statute says, should not be construed to apply to any road then constructed and in operation, or to any part of such road. The effect is the same, assuming that steam railroads were at all within the provision of the statute, as though the Sea Beach Railroad had been named specifically as territory exempted from the operation of the law.

Section 101 of the railroad law is as follows:

"Sec. 101. Rate of Fare. No corporation constructing and operating a railroad under the provisions of this article, or of chapter 252 of the Laws of 1884, shall charge any passenger more than five cents for one continuous ride from any point on its road, or on any road, line or branch operated by it, or under its control, to any other point thereof, or any connecting branch thereof, within the limits of any incorporated city or village. Not more than one fare shall be charged within the limits of any such city or village, for passage over the main line of road and any branch or extension thereof if the right to construct such branch or extension shall have been acquired under the provisions of such chapter or of this article. This section shall not apply to any part of any road constructed prior to May 6, 1884, and then in operation, unless the corporation owning the same shall have acquired the right to extend such road, or to construct branches thereof under such chapter, or shall acquire such right under the provisions of this article, in which event its rate of fare shall not exceed its authorized rate prior to such extension. The legislature expressly reserves the right to regulate and reduce the rate of fare on any railroad constructed and operated wholly or in part under such chapter or under the provisions of this article."

Again, assuming, but without deciding, that the language of this section covers the case of several separate and distinct railroads, with their branches and extensions, constructed by separate and distinct railroad companies, but operated within the limits of an incorporated city as a uniform and continuous system by a corporation which has acquired them by lease or purchase, so that but one fare of five cents can be charged for a ride over all of them together, and not merely over each of them and its branches and extensions, regarded as a single and independent road, it is equally apparent, as in the case of the law of 1884, that the section has no application to the Sea Beach Railroad. The article is entitled "Street Surface Railroads," and the corporations which must comply with its provisions, are stated in section 90 to be those "organized since May 6, 1884, for the purpose of building and operating or extending a street surface railroad or any of its branches, * * * upon and along any street, avenue, road or highway," etc. So that the limitation to the charge of a single fare is not only confined to the class of railroads to which the article refers, viz. street railroads, but, by any fair construction of the express terms of section 101, must be regarded as excluding from its operation the Sea Beach Railroad, by virtue of the provision that it shall not apply to

any part of any road constructed and in operation prior to the passage of the act of 1884; and, as was the case in the act of 1884, the exception is not to the corporation owning such a road, but to the road itself, and every part of it. It necessarily follows that the corporation owning the Sea Beach Railroad could charge a passenger at least five cents for traveling over its road, as that sum is within the limit which that company, under the terms and conditions of its organization, may lawfully charge. It also necessarily follows that the company owning the Sea Beach road could lease the Third avenue line, and operate both as a continuous route, charging two fares; for, even if section 101 was construed to apply to steam railroads, the union suggested would not be within the terms of that section, because the company owning the Sea Beach road would not "have acquired the right to extend such road, or to construct branches thereof," under either chapter 252 of the Laws of 1884, or article 4 of the railroad law. The section of the railroad law which authorizes leases is section 78, and is contained in article 3, and hereinafter is more specifically referred to. And to my mind it seems equally clear that the defendant, although the lessee of the Third avenue line, must, as lessee of the Sea Beach route, succeed to the same right to operate both roads, charging two fares, if the provision permitting only one fare does not apply to the latter road, and if the lease by which the latter road has been temporarily acquired by the defendant is a lawful contract. It is unreasonable to suppose that the framer of section 101, giving it the interpretation contended for by the plaintiff, contemplated a union of a steam railroad and a street railroad, but it is apparent that he had in mind only the union of street railroads, to which class of roads alone the article applies. In case of the latter union, there would be no serious injustice in providing that a company operating a street railroad of its own, and also leasing another street railroad connecting with it, should carry the percentage of passengers who might desire to traverse both at a single fare. The expenses of operating and maintaining the second road could still be obtained from the travel which would be confined to it alone, and which would come naturally from the streets through and upon which it was constructed. But in the case of a steam railroad, built exclusively on private property, with no street corners at which to pick up passengers for a short haul, the corporation would be compelled to pay all the expenses of operation and maintenance, with little or no possibility of additional revenue. There is nothing in the statutes which, in my opinion, calls for so unfair a construction and so onerous and burdensome a result. The same reasoning applies with equal force to the provisions of section 104 of the railroad law relating to transfers, where passengers are carried over connecting roads operated together under either leases or traffic contracts. That section also is contained in article 4, and was intended to embrace street railroads only.

It is not claimed by the plaintiff that the lease of the Sea Beach Railroad is in itself unlawful, or that the defendant had no right to convert the steam railroad temporarily into a trolley line, and to operate it as such, independently of the Third avenue road. I know of no authority for the proposition that, even if such claim could be

successfully advanced, it would entitle a passenger to ride for nothing. The claim which the plaintiff urges, however, is that the defendant, by the terms of the statute under which it is incorporated, had no franchise to exact more than five cents from each passenger for one continuous trip, and that by the lease of the Sea Beach Railroad it acquired no additional franchise to exact toll from passengers. In other words, he claims that the lease could confer no other power upon the defendant than the right to use the lessor's road, the lessor having no power under the statutes to confer upon another company by lease the franchise to take tolls granted to it by the state. A contrary view seems to have been taken by this court in the case of Brooklyn El. R. Co. v. Brooklyn, B. B. & W. E. R. Co., 23 App. Div. 29, 48 N. Y. Supp. 665,—a controversy which presented many features analogous in fact and principle to those existing in this case. One of the questions considered was as to the power of a street-railroad company to contract to charge more than a single fare for a ride partly over a steam railroad leased and converted by it into a trolley road. The court said (page 33, 23 App. Div., and page 668, 48 N. Y. Supp.):

"It is suggested by the learned counsel for the defendants that the contract was in violation of the statute, which provides that any street surface railroad corporation owning or operating any such railroad in a city having a population of 800,000 or more may contract with any other such corporation for the use of their respective roads (Laws 1890, c. 565, § 103); that they shall carry, between any two points on the railroads embraced within such contract, any passenger desiring to make one continuous trip between such points, for one single fare, not higher than the fare lawfully chargeable by either of such corporations (Id. § 105); and that no corporation operating a railroad under the provisions of this article, or of chapter 252 of the Laws of 1884, shall charge any passenger more than five cents for one continuous passage; but this section is not applicable to any part of any railroad constructed prior to the 6th day of May, 1884, and then in operation (Laws 1890, c. 565, § 101). It is alleged in the complaint, and admitted by the answer, that the West End Company is a corporation organized in November, 1885, and in 1890 was operating a steam surface railroad; and evidence was given to the effect that prior to April 24, 1889, it was operated as a steam surface railroad, and that it was the successor of the old Gunther Railroad, and had been operated for nearly 20 years. The statute above referred to not only excludes from the five-cent fare provision railroads constructed prior to May 6, 1884, and then in operation, but includes within the provisions of section 105 those street surface railroads only which are in cities having a population of 800,000 or more. A considerable portion of the West End Railroad was not within a city at the time the contract was made, nor until the 1st of January, 1896, when the boundaries of the city of Brooklyn were so extended as to make them the same as the county of Kings. Laws 1895, c. 954. In Prospect Park & C. I. R. Co. v. Brooklyn, B. & W. E. R. Co., 84 Hun, 517, 32 N. Y. Supp. 857, it was held that the power of such railroad corporation to contract for the use of another railroad was not dependent upon any other statutory provisions than those of chapter 216, Laws 1839. In that respect that case is not authority applicable to the present case, since the act of 1839 was repealed May 1, 1891. Laws 1890, c. 565, §§ 180, 183. It would, therefore, seem that the only authority to make the contract in question was derived from the provisions of chapter 305, Laws 1895, and of chapter 565, Laws 1890; and, if the West End road were treated as a street surface railroad within the meaning of the statute, there might be some difficulty in bringing the contract relating to it within the authority given by these or any statutory provisions. But, in view of what has already been said about the situation and location of that railroad, it may not be deemed to have been a street surface railroad when the lease of it was made to the Atlantic Avenue Company, or at the time the contract in question

was made. The lease or contract for the use of the West End road may there-
fore come within the authority of section 78, c. 565, Laws 1890. In the view
taken of it, the contract in question is not within any inhibition of the statute."

Chapter 565, Laws 1890, was the original railroad law, afterwards
amended by chapter 676, Laws 1892, the present railroad law. The
numbers of the sections differ in some instances, but the general provi-
sions are the same, so far as applicable to this case. Section 78 re-
mains, with the amendment that although, as section 78 of the original
law, it was entitled "Lease of Road," the word "lease" does not appear
in the text of the section, which related in terms to "contracts" only,
while, as amended in 1892, the words have been inserted, "and if such
contract shall be a lease of any such roads"; thus clearly indicating
the legislative intent to authorize a lease, as well as, and as distin-
guished from, a mere traffic contract, providing for the transportation
of the passengers of one railroad corporation over a part of the line
of another railroad company, and which contract may not involve the
transfer of the entire corporate property, rights, franchises, and man-
agement. In Ingersoll v. Railroad Co., 157 N. Y. 453, 52 N. E. 545, 43
L. R. A. 236, it was held that chapter 216, Laws 1839, hereinbefore re-
ferred to in the quotation from the opinion in the case of Brooklyn El.
R. Co. v. Brooklyn, B. B. & W. E. R. Co., entitled "An act authorizing
railroad companies to contract with each other," has been in full force
and effect from the day of its enactment to the present time, being
re-enacted in section 78 of the railroad law. Chief Judge Parker said
(page 459, 157 N. Y., and page 547, 52 N. E.):

"The act applies to both steam and street surface railroad corporations, and
authorizes both traffic agreements and leases. People v. O'Brien, 111 N. Y. 1,
18 N. E. 692; People v. Railway Co., 89 N. Y. 75; Woodruff v. Railroad Co.,
93 N. Y. 609."

In view of the precise terms of section 78, of the authorities cited,
and others which might be presented, it certainly cannot be said that
the lease of the Sea Beach Railroad to the defendant was without war-
rant of law. The lease required the defendant to assume and pay
the interest on the bonded indebtedness of the lessor corporation, and
the taxes, and all the expenses of the maintenance and operation of
the road during the duration of the term. Did it involve the proposi-
tion that this was to be done without the right on the part of the de-
fendant to receive any emolument from that portion of the traveling
public as should be carried over the private right of way? Clearly,
if the road, after being leased, was operated by the defendant entirely
independently of the Third avenue line, there could be no serious
contention that the defendant would be compelled to carry passengers
without charge. Under such circumstances, the right to charge
would pass under the terms of the lease, and in accordance with a
practice among railroad corporations almost as old as their existence.
Fisher v. Railroad Co., 46 N. Y. 644; Woodruff v. Railroad Co., 93 N. Y.
609. As was said by the court in the case last cited (page 616), re-
ferring to the act of 1839, now embodied in section 78 of the railroad
law:

"This act * * * has been held by this court to confer power upon rail-
road corporations, not only to acquire, but also to transfer to other railroad

corporations, by lease, the exclusive right to enjoy the property and privileges of the lessor in such contract. Fisher v. Railroad Co., 46 N. Y. 644; People v. Railroad Co., 27 N. Y. 232; Troy & B. R. Co. v. Boston, H., T. & W. R. Co., 86 N. Y. 107. Since this act, various statutes have been enacted in this state, recognizing the validity of such leases, and imposing duties and obligations, as well as conferring powers, upon the lessees of railroads, with a view of enlarging the benefits and privileges enjoyed by them under such transfers. Among those acts may be cited chapter 222, Laws 1847; chapter 302, Laws 1855; chapter 582, Laws 1864; chapter 254, Laws 1867; chapters 237, 844, Laws 1869; chapter 349, Laws 1880."

In Fisher v. Railroad Co., supra, the court of appeals held that under an agreement by which the defendant, a railroad corporation, acquired the right to use the road, property, and franchises of another corporation during its corporate existence, which latter corporation was authorized by its charter to charge four cents a mile for the transportation of passengers, the defendant succeeded as lessee to that right, limited, however, to the tracks of the corporation so acquired.

From the statutes and decisions cited, it would seem evident that the defendant is entitled to make the charge complained of, unless prohibited by the fact that it operates a street railroad in connection with the Sea Beach road. As section 101 of the railroad law does not apply to the latter road, the five cent fare provision can have no force in this connection. There is, consequently, no express legislative prohibition, and surely there is no occasion for a forced construction of the law for the sake of creating one. No reason can be suggested for such a construction of the railroad law as would permit the defendant to convey its passengers from the Brooklyn Bridge to Coney Island at a charge of two fares, provided the passengers were subjected to the annoyance and inconvenience of alighting at the junction of the two roads, and there purchasing a ticket, and boarding another car, but which would deprive it of the right to charge the second fare merely because it had voluntarily constructed a temporary union of the two roads at that point, in order to promote the comfort of passengers by affording a continuous and uninterrupted transit

The defendant should have judgment.

Judgment directed in favor of the defendant upon agreed statement of facts, with costs. All concur.